Case No. 20-1191, USA v. Freddie Wilson, Argument Not to Exceed 15 Minutes Per Side. Mr. Tableman, you may proceed for the appellant. Thank you very much. Now that I've unmuted myself, please the court. My name is Kenneth Tableman. I'm here on behalf of the appellant, Mr. Freddie Wilson, on this direct criminal appeal. Your Honors, the problem in this case, from our perspective, is that the proof of possession of the drugs and the firearm in this case was not sufficient. And the way the case was tried, there was evidence of a prior drug sale that was admitted. An argument made during the trial that Mr. Wilson was a drug dealer, propensity argument, in other words, Your Honor. And I think this case really comes down to a question of how this court is going to enforce the presumption of innocence that exists in criminal trials. If the trial courts are going to allow evidence of other acts, they have to do so carefully. And that was not done in this case. If you look at the district court's ruling on the pretrial motion to admit the drug sale of April 9th, there's no explicit balancing of probative versus prejudicial impact of the evidence. Is that required? So on the evidentiary issue, there were basically two different grounds that the evidence could have been admitted under. One was background or res geste, and the other one was more sort of standard 404B purposes. That's right, Your Honor. So long as it's admissible under one, is that good enough? Well, I think, yes, to answer your question, yes. However, we don't concede that it was admissible under either. No, I understand. I understand that. The background evidence, I don't understand the link between a sale away from a place and how that somehow causally connected, spatially connected to the drugs and the gun in the house. Yes, I guess there's a temporal connection. They monitored him. They observed him drive away from the home, right, to another location. They did on April 9th. They saw him on April 10th. Yes, right. I guess the question I have is where we draw the line between what is truly background evidence and what is really very incriminating evidence that may otherwise not come in because it does sort of go to your propensity point. And I think that can be a hard line to draw. In this case, though, it's like a day before, and they observe him driving somewhere else, making the sale, coming back, and then they search the home. And so that seems like not the hardest case. I think there can be hard cases here. This one, in some ways, doesn't strike me as the hardest. Well, I think with all due respect to the court's precedence on background evidence, I think it's a stalking horse for the admission of improper other acts evidence. It's a shorthand. It's very problematic. And, for example, if there was some need to show why the officers were at the house on April 10th, why does there have to be proof of the specifics of a drug transaction on April 9th? Why can't it be enough to say, we were conducting an investigation, and we saw this person leave this residence on April 9th? And then with a duly issued search warrant, we went to the house on April 10th, and we saw him go and arrested with a car wash. I mean, I have a real problem with background evidence, and as I cited in my brief, the Supreme Court of Hawaii, it's an outmoded doctrine that should not be used. It's problematic, and it lets the government bring in improper evidence and improper propensity evidence. So that's my response to the background evidence. I do think that a person on one day engages in a drug transaction at a particular location doesn't tell us very much about the possession of drugs and the possession of a gun at another location on another day. Yes, it's one day in time. And you can say, well, we know he's at this address, and he came from the address, and now we're starting to pile inferences on inferences. I mean, knowledge is an element of all these three charges. And I'm not sure how proof that he's distributing drugs somewhere else tells us what he knows about what's inside a house on a different day. So. Yeah, I suppose. I mean, unless he's solely dealing drugs from his car, you probably figure he's got a home base where he's leaving from where he stores drugs and or weapons. Sure, we can. Sure. To finish the thought, they observe him leaving that house going to another location and coming back. And so, I mean, there's a related point, I suppose, right, which is it's not, maybe this goes to your sufficiency point, but he didn't own the house, right? It's not in his house, and there's no proof about the house. And the articles are not out in plain view, and they're not in his room. They're in a kitchen cabinets that are closed. But didn't he make statements that he stayed at the house with the daughter and the daughter's mom and wasn't there mail at the house with his name and address on it and toiletries and other things that would be part of the indicia of him staying there? I don't think ownership is critical, but whether he stayed there. Well, it's he admits and says, I stay there, which, on the other hand, his driver's license somewhere else. But let's, let's accept that his clothes are there. He says he stays there. The drugs are not found on top of his clothes. The drugs are not found next to his mail. The drugs are found inside cabinets in a common area. So it's asking, asking the jury to infer that because he stays there, somehow he has possession of these things that are in these cabinets and knows that they're there. How do we know that? Did he argue there were anyone else's in the home? Probably not that there's a topic. Well, he did not. He did not. How should we put this? He said, it's not tied to me. There's other people in the home. And the proofs of the case show, the officer said, we saw the woman that leased the car that he was driving leave the home with another adult woman before they went and arrested Mr. Wilson that day. And I don't think he has to, I don't think he has to argue. Someone else had the drugs. There's someone else's drugs. All he's saying is, I'm not guilty. I don't know. It's not his burden. It's government has to, he's presumed to be innocent. They've got to prove their case. It's got to be enough information for a jury to be very certain that this is his stuff. And if you look at all these other cases, and I had lots of them myself, usually the drugs are, and the gun are very tightly connected. And usually they're very, it's very apparent that person had control of them. And that's not, I submit, that's not the case here. That's just one other question about the background evidence point. I know you argue well under 404B, which is a separate basis for admission, that there has to be a sort of rule 403 balancing probative and prejudicial. Do we do the same thing on the background evidence point? Assuming we think it's part of the res geste, do we also do a 403 analysis? I hadn't thought about that, Your Honor. But yes, I guess I would argue that, of course you do. Don't we have, doesn't the trial court have to balance probative versus prejudicial against every piece of evidence? And I hadn't thought about this, but in the, I guess I'm stumbling here because I'm trying to think of a situation. Where evidence might be too prejudicial, I guess. As we were looking at it, as we were looking at it, we found some cases that didn't seem to do and some that didn't. And so I just wanted to get your take. And your friend on the other side can obviously share his view. So, I think I've pretty much covered everything I wanted to say. Well, you can reserve your time for rebuttal. And I'll come back and speak again. Thank you very much. Okay, thank you. Mr. McGraw. Good morning. May it please the court. My name is Dan McGraw. I represent the United States of America. In this matter, we are asking the court to affirm the conviction and rulings of the district court in this case. And if I may, I'll just jump right in. Based on my colleagues arguments I believe the more pressing issue is, is the background evidence or the admitting of the April 9 drug deal as background evidence and in the alternative for proper purposes under Rule 404 B. We would ask the court to follow the Chalmers case. I believe I'm pronouncing that correctly, which we cited in our brief regarding the admission of this evidence as background evidence there. This court has recently held that it needs to be a close temporal, spatial, or causal proximity between the other act or the non-charged evidence with the charged offenses. And that is exactly the case here. And that is exactly the evidence that the jury heard in this case. Mr. Wilson was charged with possessing drugs that were found during a search warrant on April 10th. The very day before, officers observed him leave that house in a rental car to go straight from the house to conduct a drug deal with a confidential informant. He sold the confidential informant cocaine base that day. The following day, they executed the search warrant based on that and prior controlled buys that they had done from Mr. Wilson. Sure enough, they find drugs and a firearm in the residence. But prior to the execution of the search warrant, officers saw Mr. Wilson leave the residence again in the same rental car that he used the day before and traveled just approximately a half mile from the house where he was sitting in a parking lot. When officers encountered him there, and I think this fact is very important for the court's analysis regarding the background evidence, he was found with almost $10,000 in cash, almost $1,000 of which was controlled buy money from the very day before. So for that evidence to be relevant and introduced to the jury, they needed to hear the full story, where that money came from the day before when Mr. Wilson sold drugs to a confidential informant. So I would note that in terms of the intrinsic argument, the government's position is that it was certainly close temporally. It was the day before. This court's precedent has admitted much older intrinsic evidence than that. So I would argue that the temporal proximity is extremely close. Were there four controlled buys before the search? That's correct, Your Honor, between March 12th and April 9th. And so the only one the government utilized as background evidence was the most recent one? That's correct. Why didn't they use the other three? In other words, is there some limiting principle that we can draw from the way you decide to utilize certain evidence and not utilize other evidence? Well, and I think both our decision to use that and the district court's ruling get at the questions that were asked to my colleague regarding whether there's a balancing principle involved for intrinsic evidence. Because in the district court's ruling, he expressly found, after hearing evidence related to the suppression motion, that the buys maybe from earlier in March, which were a little bit more temporally attenuated from when the search warrant was executed, those may not be, under this court's precedent, temporally related and then properly admitted as intrinsic evidence. So I think there was an implicit balancing of the prejudice versus probative nature when the court looked at, look, okay, we're not going to admit all four controlled buys. We're going to admit one, evidence of one, from the day, the very day before we executed the search warrant. And not only that, but the other commonalities in facts that were shared between the two days. The same rental car, by the way, rented in his girlfriend's name. The controlled buy money on his person, two cell phones. I mean, these were all indicia of drug trafficking. And I think by that limiting that the district court did, it was an implicit balancing. And yes, I think the court can take that into consideration when deciding the intrinsic issue. When you say balancing, are you referring to my question about the 403? Whether we should be customarily doing that as part of a background analysis? I am, Your Honor. And I don't have any cases where that has been done. So I'm not saying that that is the rule that this court follows. I just am saying that in this case, I think the district court implicitly did that when he admitted, excuse me, when the district court admitted just one out of the four controlled buys that was so close in time to when the evidence was found during the search warrant. And so, Your Honor, that's my argument regarding the intrinsic nature. I think this evidence was clearly intrinsic. And the jury heard testimony from a sergeant with the Michigan State Police who was offered and admitted as an opinion witness about what drug dealers do to distance themselves from their crimes. And everything that Mr. Wilson did in this case was consistent with that officer's experience about what drug dealers try to do. First, they use a house that may not necessarily be easily tied to them, right? As my colleague pointed out, his address on his license was somewhere else. So they stash their drugs where someone else might be on the hook. They use rental cars. They use multiple cell phones. They stash the drugs in a location where it can't easily be attributed to them, as my colleague would have hoped, you know, not on his nightstand next to his driver's license or his passport. So I think the fact that the evidence from the day before that that was introduced, it was proper because of the issues that Mr. Wilson was putting in front of the jury. Those weren't my drugs. I didn't live there. It was someone else. And I certainly didn't have the intent to distribute it. So if I could sort of move just to briefly address the 404B issue, I don't think this court... I think your friend on the other side, I think, agreed with me. Am I right that if we agree with you on background, we don't have to reach this issue? That's absolutely correct, Your Honor. And that would be the government's argument is that the court need not even get to 404B because this is squarely under Chalmers, I believe, a 2019 case properly admitted as background evidence. I can speak on the 404B issue if you'd like. Otherwise, I will just touch on the first issue raised by the appellant, which is sufficiency of the evidence. And under this court's precedence, Jordan and Williams specifically, because a Rule 29 motion was not made, motion for judgment of acquittal in the district court, this court's review is limited to whether a manifest miscarriage of justice occurred. And it simply did not in this case. Is there any evidence that would suggest these were not his drugs? I realize they were found in a shared home. But was there any evidence at all that they wouldn't be his? Ultimately, this is sort of a question for the trial court, and it primarily looks at the evidence, of course. But is there any evidence that the drugs were not his? There was not, Your Honor. From the government's standpoint, there was not. I think a good piece of evidence to discuss in response to that question is the fact that mail was found in the home. It was addressed in Mr. Wilson's name and in his girlfriend's name, but in no one else's name. So, you know, there weren't utility bills or anything else that would suggest there was another individual, another adult living in that home other than Mr. Wilson and his girlfriend. And there was no evidence. His girlfriend did not testify. There was, you know, nothing regarding her is in the record. And so the only evidence in the record points to Mr. Wilson, who admitted staying at that house with his girlfriend and their small daughter. In addition to the other evidence that's already been referenced here today, pointing to the fact that he lived there or stayed there on occasion and certainly possessed those guns and intended, or excuse me, drugs and gun and intended to distribute those drugs. There's a little less evidence, wouldn't you say, tying Mr. Wilson to the firearm than to the drugs? Your Honor, in response, I would I would respond. Yes, I think there was no for instance, there was no evidence admitted that the CIA, you know, saw him with a gun during the controlled by from the day before. The government's argument at trial was that drug dealers use guns to protect their drugs in a stash house. And the pictures that were admitted of the search warrant showed that the drugs were found on one side of this in a cabinet on one side of the sink. And the gun was found in a cabinet on the other side of the sink. So the argument in closing was he was keeping a stolen, illegally possessed firearm in close proximity to his drugs to protect his his his stash. So but your honor is correct. There was no DNA analysis or fingerprint analysis done on the firearm that, you know, would have suggested it was it was Mr. Wilson's. But our argument was more tied to the drug dealing aspect of it. Thank you. Anything further, Mr. McGraw? Unless your honors have any additional questions for me, I would rest on on the arguments made in our brief and I would have nothing further. Thank you. OK, apparently no further questions. Mr. Tableman, you've got, I don't know, but probably about five minutes of rebuttal. Thank you very much, your honor. Let's start with the handgun. It's found in a common area, and I guess we can we can argue about proximity or not, but if you think about the so-called background evidence, it has nothing to do with the gun. As my colleague said, he didn't have the gun with him on April 9th at the transaction on April 9th. He didn't have a gun with him when he was arrested on April 10th. It was in the cabinet. So I guess the theory is all drug dealers possess all guns that are found in a house that they may live in. I don't think I really don't think that that is sufficient. Not if you look at the particulars of where this particular gun was found and the fact that there's no nothing to tie into that gun. An opinion of an officer that some drug dealers follow these patterns, I don't think is really sufficient evidence. No fingerprints, no DNA, no testimony that it's his gun. The gun's not found on top of the mail with his name on it. It's not found on top of the drugs. It's not found in his clothing. It's not admitted to. A crucial factor in this case is that the issue, as I see it, is the possession aspect, possession of the gun, possession of the drugs. That's the aspect of this case. And I struggle with how it is that selling drugs away from a residence on one day is somehow intrinsically related to possessing drugs on another day. There's a division between the distribution and the possession. So I, although it's close in time, I submit that it's not really even proper background evidence. If you think about the question that we've just heard, we're making assumptions about drug dealers do this and drug dealers do that without proof. And that's what the jury was asked to do in this case. And the district court should not have allowed it. And at least as to the handgun, the district court did say it would give a limited instruction. But the instruction had nothing to do with the gun. It had to do with the drugs. And the case I cited at 690 Federal Appendix, which of course I've lost the name of now, but where I contrasted the instruction that was given in that case with the one that was given here. In that case, the district judge said, hey, this other evidence that's coming in is only to be considered for these limited purposes and that has nothing to do with the gun. So under any theory, none of this evidence, whether it's 404B or background, has anything to do with this handgun. It's improper. It had to impact the jury. It's highly prejudicial as to the gun aspect of the case. So I respectfully ask the court to carefully review this matter. We're asking the court to enter a judgment of acquittal on the gun counts. And if the court feels that there's impropriety, admission of the evidence to order a new trial as to everything. Thank you very much, Your Honor. Sure. This is not a case where the gun was found some other location in the house. It was within proximity, as I understand it, of the drugs. The gun is found in one cabinet, I guess one side of the sink, and the drugs and scale are found in a cabinet on the other side of the sink. So we're not talking about great distance from one another. No. I agree, but it's... But it seems to me you'd have a strong argument, you know, gun had been found some other room of the house or... It's not tied to him. It's a common area and no showing of knowing possession of these articles. Okay. Thank you. Thank you very much, Your Honor. Anything further?  Okay. Thank you. Counsel, Mr. McGraw, Mr. Tableman, thank you very much for your arguments. I think it's still morning. I had to check my phone there. We especially thank you, Mr. Tableman, for taking this case under the Criminal Justice Act. We realize there's a degree of sacrifice that goes along with that. And you are, of course, providing a great service to Mr. Wilson, but also to the system at large. So we really do appreciate your willingness to take this and other matters on under the act. But again, I thank both of you for your arguments and we'll take it under advisement and we'll have a decision for you in due course.